In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| **JAMES M. KANARD**,                )<br>                                                        )<br>                        Plaintiff,    )<br>                                                        )<br>        vs.                                         )<br>                                                        )<br>**JO ANNE B. BARNHART**,        )<br>Commissioner of Social Security,  )<br>                                                        )<br>                        Defendant.  )<br>_____) | Civil Action No. 9:05-2255-DCN-GCK<br><br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF THE MAGISTRATE JUDGE** |

## I.  INTRODUCTION

This case is before the Court pursuant to Local Civil Rule 83.VII.02(A), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(c).

The plaintiff, James M. Kanard (the "Plaintiff" or "Claimant"), brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, respectively.[1]

---

[1] The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program ("SSI"), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (DIB); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here,

Page 1 of  19

## II.  BACKGROUND TO CLAIM

Plaintiff was born on April 2, 1950.  He has a sixth grade education (Tr. 42) and reads at a third grade level.  (Tr. 222)  He has worked in the past as a janitor, tile layer, furniture mover, brick mason, and brick mason's helper.  (Tr. 67)

## III.  ADMINISTRATIVE PROCEEDINGS

On September 27, 2002, the Plaintiff protectively filed applications for SSI benefits and DIB concurrently, alleging a disability onset date of May 15, 2001.  (Tr. 29)  Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration, and a request for hearing was timely filed on July 29, 2003.  (Tr. 17)

On November 5, 2004, a hearing was held in Greenville, South Carolina before the administrative law judge, Karen H. Baker(the "ALJ").  (Tr. 38-71)  At the time of the hearing, Plaintiff was 54 years old.  Plaintiff was represented by his attorney, David D. Armstrong.

Plaintiff testified that his hip hurt all of the time (Tr. 51), due to a fall from a scaffold in 1988, when he was working as a brick mason.[2]  After that accident, Plaintiff had surgery on his left hip, which was repaired with pins and plates.  (Tr. 51, 59)  This injury resulted in a closed period of disability from September 1988 to 1989.  (Tr. 51)

He testified he had been trained as a brick mason but was unable to return to that work after his accident in 1988.  (Tr. 54)  He worked other jobs, and most recently did floor maintenance (using a buffer) until 2001, when he could no longer perform the job because his hands kept swelling and his feet and legs bothered him.  (Tr. 46)  Plaintiff could not walk, and

---

[2] substantively identical.  See Bowen v. City of New York, 476 U.S. 467, 469-470 (1986).

could not wear shoes because his feet were too swollen. (Tr. 47) Plaintiff testified that he held a number of temporary jobs over the years because he could not hold down a permanent job. He told the ALJ: "I was always out with my hip, or either my wrist welling up, my feet. And the gout's been having me more or less where I couldn't [INAUDIBLE]. And my hip gave me problem, '88 when I got hurt. And I couldn't perform the job like I was supposed to, and I was always getting complained with the boss man of mine." (Tr. 50)

Plaintiff testified that his biggest health problem was his gout, which was in his joints and "it continually hurt all the time. It's unbearable, really. And my hip, I can't put much weight on it because it's just a pain I can't explain. [INAUDIBLE] all the time." (Tr. 55) He stated that his prescribed medication for gout reduced the swelling in his joints, but it did nothing to relieve his pain. (Tr. 56) Plaintiff uses a walker, which was given to him by a nurse at the free clinic. (Tr. 52) Plaintiff stated he could walk for only approximately half a block before he experienced "unbearable" pain and became short-winded. (Tr. 56). Plaintiff also testified that he wore sandals, without socks, because his feet were swollen, always too tender to wear socks and shoes. (Tr. 56-57) He had trouble sleeping with his gout because he was "paining all the time" and that the gout was constant. (Tr. 57-58) Plaintiff testified that the gout was in both of his hands and wrists, so he could not "grip [with his hands] like I'm supposed to." (Tr. 58) Plaintiff is left-handed, (Tr. 67) and testified that he could not perform the brick masonry work or his other former jobs operating machinery because of the gout. (Tr. 58) He testified he had to use a cane or a walker when he walked. (Tr. 59) Plaintiff also testified that he had no grip strength, so he could not use hand tools. (Tr 59-60). He suffered from back pain, took medication for high blood pressure, was short of breath, had no energy, and was depressed. (Tr. 60-61) He said he

never had any back problems until he hurt his hip in 1988. He also has pain going down his left leg. (Tr. 61)

The ALJ also heard testimony from a vocational expert, Benson Hecker, Ph.D. (the "VE"). (Tr. 66-69) The VE testified that Plaintiff's past relevant work as a janitor was unskilled and medium; as a furniture mover was unskilled and very heavy; as a brick mason was skilled and medium; as a brick mason's assistant was unskilled and heavy; and as a tile layer was semi-skilled and heavy. (Tr. 67). The ALJ posed a hypothetical question to the VE, based upon a Physical Residual Functional Capacity Assessment (Tr. 203-204),[3] which limited Plaintiff to performing light work, lifting 20 pounds occasionally, 10 pounds frequently; sitting, standing, or walking for six hours each in a eight-hour day; with limited ability to push and pull with the left hand; occasional climbing, balancing, and crawling; and frequently able to perform all other postural activities. (Tr. 67) The VE testified that Plaintiff could perform unskilled work which did not require transferable skills (Tr. 67-68), which included light janitorial jobs, security jobs, and machine operation work. (Tr. 68) The VE specifically testified that Plaintiff could perform these jobs even given his marginal or limited education (Tr. 68), although, if Plaintiff's testimony as to his pain and limitations were credible, there were no jobs that Plaintiff could perform. (Tr. 68-69) Lastly, the VE testified that if it were assumed that Plaintiff had problems with his leg and gout, and significant pain, and had to use a cane or walker to ambulate, then he would not be employable. (Tr. 69)

---

[3] The ALJ referred to this document in the transcript as Exhibit B6-F.

At the end of the hearing, the ALJ said she wanted Plaintiff to undergo a consultative psychological examination to evaluation his ability to read, and think, and his depression. (Tr. 69)

The ALJ issued an unfavorable decision on March 12, 2005 (Tr. 14-23), finding the Plaintiff was not disabled. On June 10, 2005, the Appeals Council denied Plaintiff's request for review (Tr. 5-8), thereby making the ALJ's decision the Commissioner's final decision for the purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481. The Plaintiff has exhausted his administrative remedies and filed suit on August 8, 2005. The parties have briefed the case, and it is now ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g), 20 C.F.R. §§ 404.981, 416.1481 (2005).

## IV.  THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

1. On September 27, 2002, the claimant protectively filed concurrent Title II and Title XVI applications, alleging a disability onset date of May 15, 2001.

2. The claimant met the earnings requirements of the Act at the time disability is alleged to have commenced, and he has continued to do so at least through the date of this decision.

3. The claimant is presumed to meet the nondisability requirements of Title XVI.

4. The claimant is 54 years old and has been in the "approaching advanced age" category at all pertinent times. He has a "marginal" education.

5. The claimant's past relevant work experience includes jobs as a janitor, a furniture mover, a brick masons's helper, a brick mason, and a tile layer. His job as a janitor was unskilled, "medium" work, and his job as a furniture mover was unskilled, "very heavy" work. As a brick mason's helper, he performed unskilled, "heavy" work. His job as a brick mason was skilled,."medium"work, and his job as a tile layer was semi-skilled, "heavy" work.

6. The claimant does not have any skills from his past work that are transferable to other jobs.

7. For the purposes of this decision, it is presumed that the claimant has not engaged in substantial gainful activity at any time relevant to this decision..

8. The claimant suffers from the following medically determinable, "severe" impairments: a borderline range of intellectual functioning, a left wrist abnormality related to gouty arthritis, degenerative joint disease affecting the right ankle, and a depressive disorder. He has no other "severe" impairments.

9. The claimant has suffered no mental or physical impairment, or combination of impairments, which meets or is medically equivalent to any of the impairments listed in Appendix 1 to Subpart P of Social Security Regulation No. 4. Although he has a chronic mental illness, his impairment is not of the level of severity required to satisfy the C criteria of any Listing, including Listing 12.04 and/or 12.05. The claimant has only "mild" limitations in activities of daily living and in social functioning, and only "moderate" limitations in concentration, persistence, or pace. He has not experienced any extended episodes of decompensation.

10. The claimant's testimony was not fully credible with respect to his symptoms, including pain, and resulting functional limitations.

11. At all pertinent times, the claimant has had a residual functional capacity of simple, "unskilled" jobs with the limitations set forth at Exhibit B-6F.

12. With the above-described residual functional capacity, the claimant cannot perform any of his past relevant work.

13. Credible vocational expert testimony establishes that there are a significant number of "unskilled" jobs in the economy, with the exertional and nonexertional limitations noted above, which the claimant can perform.

14. Given the claimant's age, education, past vocational experience, lack of transferable skills, and the above-described residual functional capacity, the framework of Rule 202.10 of the Medical-Vocational Guidelines, in conjunction with the testimony of the vocational expert, supports a finding that the claimant is not "disabled" within the meaning of the Social Security Act. (Tr. 29-30)

## V. APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2005).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (2005); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981). The five questions are:

> (1) whether the claimant is engaged in substantial gainful activity as defined in Sections 404.1510, 404.1571 et seq., 416.971 *et seq.* If such determination is affirmative, no disability will be found. 20 C.F.R. §§ 404.1520, 416.920.
>
> (2) whether the claimant's impairments meet the durational requirement (Sections 404.1509 and 416.909) and are severe (Sections 404.1520(c), 416.920(c)). If they do not meet those requirements, no disability will be found. 20 C.F.R. §§ 404.1509, 416.909, 404.1520(c), 416.920(c).
>
> (3) whether the claimant has an impairment which meets or medically equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. §§ 404.1520(d), 416.920(d). If one of the listings is met, disability will be found without consideration of age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> (4) whether the claimant has an impairment which prevents past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> (5) whether, in light of vocational factors such as age, education, work experience and residual functional capacity ("RFC"), the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no." 20 C.F.R.§§ 404.1520(f), 416.920(f).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments (20 C.F.R. Pt. 404, Subpart P, App. 1), or capable of returning to former work. In such case, further inquiry is unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward at Step Five and "prove that the claimant, despite [his] impairments, can perform a 'significant number of jobs in the national economy.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam), citing Walls*, 296 F.3d at 290. The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20

C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

With respect to the general procedure for determining SSI disability benefits, the standard consists of a two-fold test: The claimant must show a medically determinable physical or mental impairment, and the impairment must be such as to render the claimant unable to engage in substantial gainful employment. *Walker v. Harris*, 642 F.2d 712 (4th Cir. 1981), *citing Blalock v. Richardson*, 438 F.2d 773 (4th Cir. 1972); 42 U.S.C. § 423(d); 20 C.F.R. § 404.1501(b).

## VI.  SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g) and § 1383(6)(3), this court's scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Court's scope of review is specific and narrow. It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees with it, so long as it is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Smith v. Chater*, 99 F.3d 635, 637 (4th Cir. 1996); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d at 653, *citing Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). At a minimum, "substantial evidence" to support the Commissioner's decision must include: (1)

objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history and present age. *Blalock*, 483 F.2d at 776. In reviewing for substantial evidence, the court will not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Johnson*, 434 F.3d at 653, *citing Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). If substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. *Blalock*, 483 F.2d at 775. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson,* 434 F.3d at 653, *citing Craig*, 76 F.3d at 589 (internal quotation marks omitted); *see also Hays*, 907 F.2d at 1456 (It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence) *and Smith v. Chater*, 99 F.3d at 638 (the duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court) (citation omitted). Therefore, if substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. *Blalock*, 483 F.2d at 775.

Nevertheless, this deferential standard of review does not mean that "the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F2d. 278, 279 (4th Cir. 1969). The court also must determine whether the

Commissioner's decision complies with applicable law. *Myers v. Califano*, 611 F.2d 980 (4th Cir. 1982). Therefore, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [the] conclusion is rational. *Vitek v. Finch*, 438 F.2d 1157, 1157-1158 (4th Cir. 1971) (citations omitted). "A factual finding by an ALJ is not binding if it has been reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to Section 405(g). *Vitek*, 438 F.2d at 1158 (citations omitted); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

## VII. THE ALJ'S ANALYSIS

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, the ALJ presumed that the Plaintiff not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 29, Finding 7) At Step Two, the ALJ found that Plaintiff's borderline range of intellectual functioning, left wrist abnormality related to gouty arthritis, degenerative joint disease affecting the right ankle, and a depressive disorder were "severe" impairments,[4] but, at Step Three, the ALJ found that these impairments did not meet or medically equal any of the listing of impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the

---

[4] An impairment or combination of impairments is considered "severe" when it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1520(c); Social Security Ruling ("SSR") 96-3p.

"Listing of Impairments").  (Tr. 29, Findings No. 8 and 9)  In addition, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible.  (Tr. 29, Finding 10)

Proceeding to Step Four, the ALJ determined that Plaintiff was unable to perform the requirements of his past relevant work.  (Tr. 30, Finding 12)  Because the ALJ concluded that Plaintiff could not return to his past relevant work because of his limitations, at Step Five the burden shifted to the Commissioner to come forward with evidence that the Plaintiff, considering his age, education, work experience, skills, and physical limitations, had the capacity to perform an alternative job, and that this type of job existed in significant numbers in the national economy.  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).  The Commissioner can meet this burden by proper reference to the Medical-Vocational Guidelines, also known as the "Grids".  *See* 20 C.F.R., Part 404, Subpt. P, App. 2.  However, the Grids do not apply to a claimant who suffers from significant non-exertional impairments, or who cannot perform the full range of work activity within a Grid category.  *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989).  In those cases, such as the one presently before the court, the Commissioner must produce a VE to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy.  *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983).  The ALJ relied on the VE's testimony which established that there were a significant number of such jobs in the national economy which Plaintiff could perform.  (Tr. 30, Finding No. 13)  Using Rule 202.10 of the Grids as a framework for decision making, in conjunction with the testimony of the VE, the ALJ found that Plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 30, Finding No. 14)

## VIII.  PLAINTIFF'S OBJECTIONS

Plaintiff raises three objections in his Brief, which are listed below:

Objection I.    Did the Appeals Council err in failing to reverse the ALJ, or in the alternative, remand the case to the ALJ for further testimony and consideration given the subsequent evidence and argument submitted by claimant's counsel on January 25, 2005 (246-247) which was received by the ALJ on January 31, 2005 (104-105), that commented upon Dr. Robert A Moss's psychological evaluation of the claimant conducted on December 30, 2004 (220-226)?

Objection II.   Did the Commissioner meet the required burden of proof of Step Three of the Sequential Evaluation Process, enunciated in *Hall vs. Harris*, 658 F2d 260 (4th Cir. 1981), *infra*.

Objection III.  Did the Commissioner meet the required burden of proof of Step Five of the Sequential Evaluation Process, *Id.*?

## IX.  DISCUSSION

**Objection I.    Did the Appeals Council err in failing to reverse the ALJ, or in the alternative, remand the case to the ALJ for further testimony and consideration given the subsequent evidence and argument submitted by claimant's counsel on January 25, 2005 (246-247) which was received by the ALJ on January 31, 2005 (104-105), that commented upon Dr. Robert A. Moss's psychological evaluation of the claimant conducted on December 30, 2004 (220-226)?.**

In the present case, the ALJ first posed the following hypothetical question to the VE:

Q:  Now I want you to assume that the [Plaintiff] has the limitations in Exhibit B6F for the first hypothetical, which is that he's limited to performing light work.  He can lift 20 pounds occasionally, 10 pounds frequently.  Sit, stand, or walk six hours each in an eight-hour day.  He has limited ability to push and pull with his . . . .left hand.  And he can perform occasional climbing, occasional balancing, and occasional crawling.  Frequent for all other postural activities.  If those are the limitations is there work he can do?

A:  It would have to be unskilled work.  (Tr. 67-68)

 . . . .

Q.  Okay. Now I want you to assume for the second hypothetical, first of all, what I gave you in the first hypothetical.  And then assume that the Claimant has significant pain so that at least for large portions of the month, of each month, let's say three to five days he can't wear shoes, has difficulty using his hands due to pain.  And if that's the case, is there work that he can do?  (Tr. 68-69)

> A: No, Your Honor.

Plaintiff's attorney then posed the following hypothetical to the VE:

> Q: [A]ssume that the Claimant is of the age and weight, et cetera, that he has testified to. Has a fifth-or-sixth grade educational level. That he has the problems with his leg and with the gout that he has testified to, and the significant pain that he testified to. The fact that he must use either a cane or a walker to ambulate. Given these circumstances, is there any – are there any jobs available? (Tr. 69)
>
> A: No, sir.

The ALJ then stated:

> I need to get a consultative psychological examination to determine his reading levels and level of depression.

According to 20 C.F.R. §§ 404.1519a, 416.919a, the decision to order a consultative examination will be made after giving full consideration to whether additional information needed, such as clinical findings, laboratory tests, diagnoses and prognoses, is "readily available from the records of [Plaintiff's] medical sources." Sections 404.1519a, 416.919a further provide that the Social Security Administration "will . . . use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." Pursuant to these Regulations, the ALJ sent Plaintiff to be examined by Dr. Moss, a clinical psychologist.

On January 10, 2005, the ALJ received Dr. Moss's report of the December 30, 2004 examination. (Tr. 220-226; Tr. 17). According to the ALJ's decision, the report then "was proffered to claimant's counsel on January 20, 2005 with no response [as of March 12, 2005, the date of the ALJ's decision]." (Tr. 17) The ALJ's statement, however, is incorrect. As the record reflects, by letter dated January 26, 2005, Plaintiff's attorney wrote to the ALJ to provide his comments regarding Dr. Moss's psychological examination, and the attorney's letter was

received by the Hearing Office (that is, the ALJ's office) on January 31, 2005. (Tr. 104-105) In addition, the January 26, 2005 letter is the same letter submitted to the Appeals Council by Plaintiff's attorney as Exhibit 1 to Plaintiff's attorney's April 25, 2005 letter to the Appeals Council which sought reversal and remand of the ALJ's decision. (*See* January 26, 2005 letter to the ALJ (Tr. 246-247); *and* letter to Appeals Counsel (Tr. 240-245)).

Plaintiff's attorney asked the ALJ in his January 26, 2005 letter whether the ALJ wished to schedule a supplemental hearing or desired any further comments regarding Dr. Moss's opinion. (105, 247) Not only did the ALJ fail to respond to the January 26, 2005 letter, the ALJ must have overlooked that letter, as she failed to consider the comments contained in that letter, and incorrectly stated that Plaintiff's attorney did not respond.

The ALJ's failure to address Plaintiff's counsel's written response constitutes error for two reasons. First, upon reviewing Dr. Moss's findings, it is clear as a matter of law that Plaintiff meets the listing set forth in Section 12.05(C) of the Listing of Impairments, in Appendix 1 to Subpart P.

> Section 12.05 provides:
>
> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. . . .
>
> OR
>
> B. . . .
>
> OR

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

However, the ALJ stated: "The claimant has suffered no mental or physical impairment, or combination of impairments, which meets or is medically equivalent to any of the impairments listed in Appendix 1 to Subpart P of Social Security Regulation No. 4.  Although he has a chronic mental illness, his impairment is not of the level of severity required to satisfy the C criteria of any Listing, including Listing 12.04 and/or 12.05."

The court finds that the ALJ's conclusion is not supported by substantial evidence. Under Section 12.05(C) of the Listing of impairments, an individual who has a valid verbal, performance, or full scale I.Q. of Sixty (60) through Seventy (70) and a physical or other mental impairment imposing an additional and significant work-related limitation of function is considered disabled.

Plaintiff has the burden of producing medical evidence showing that her condition met all of the requirements of a Listing.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  In the present case, Plaintiff has carried that burden.  Dr. Moss administered the Wechsler Adult Intelligence Scale test ("WAIS") to Plaintiff, who scored a Verbal IQ of 73, Performance IQ of 63, and Full Scale IQ of 66.  Thus, the Plaintiff has established that he meets the first part of the criteria for Listing 12.05(C).

The Plaintiff also can prove that he meets the remainder of the criteria of 12.05(C), which is that he has a physical or other mental impairment imposing additional and significant work-related limitation of function.  The ALJ found that the Plaintiff's medical evidence established that he has "medically determinable, 'severe' impairments" consisting of "a borderline range of

intellectual functioning, a left wrist abnormality related to gouty arthritis, degenerative joint disease affecting the right ankle, and a depressive disorder." (Tr. 29, Finding 8) The court finds that Plaintiff has a full scale IQ between 60 and 70, and he has physical impairments posing additional and significant work-related limitations of function.[5] Accordingly, he is disabled under Section 12.05(C).

The court finds the ALJ also erred when she failed to submit Dr. Moss's report to the VE, despite Plaintiff's attorney's query at the hearing as to whether the ALJ wished to schedule a supplemental hearing or desired further commentary after receiving Dr. Moss's report. (Tr. 247) "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Johnson*, 434 F.3d at 659, *quoting Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). It follows, then, that the opinion of a vocational expert is not helpful if it is not delivered "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (emphasis added). Had the ALJ properly submitted Dr. Moss's report to the VE for comment or held a supplemental hearing with the VE in attendance, the court can forecast that the VE would have concluded that there would have been no circumstances under which Plaintiff, given his physical and mental limitations, could engage in any form of substantial, gainful employment. Because the ALJ did not have the benefit of Dr. Moss's report, the ALJ's hypothetical questions to the VE did not adequately reflect Plaintiff's mental limitations.

Finally, the court notes that Section 423(b)(2)(B) provides:

---

[5] Given this court's conclusion, it will decline to address Plaintiff's argument that he also would meet the requirements of Section 12.05 D, 1 and 3.

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.  If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

Plaintiff met his burden of producing evidence to show that he had met the requirements of Listing 12.05(C), and he is disabled under the Social Security Act.  The ALJ failed to apply this Listing, and therefore erred in her application of the law.  "A factual finding by an ALJ is not binding if it has been reached by means of an improper standard or misapplication of the law."  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  The ALJ erred in not considering the combined impact of Plaintiff's impairments, and her decision denying Plaintiff DIB and SSI is incorrect as a matter of law.  Therefore, the ALJ's decision cannot be affirmed.

The Court faces the question whether to remand or reverse the decision of the Commissioner.  "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to Section 405(g).  *Vitek*, 438 F.2d at 1158 (citations omitted); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Certainly, an award of benefits is more appropriate when further proceedings would not serve any useful purpose.  *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985).  Likewise, an award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed.  *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.

1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982).  Reversal also is appropriate when there is not the slightest uncertainty as to the outcome" and the remand "would be an idle and useless formality."  *NLRB v. Wyman-Gordon Company*, 394 U.S. 759, 766 n. 6 (1969); *Barry v. Bowen*, 862 F.2d 869, 1988 WL 124873 (4th Cir. 1988).

This action has been pending since September 27, 2002, when the Plaintiff applied for benefits.  The hearing was held on November 5, 2004, and a decision was issued on March 12, 2005.  This appeal to federal court followed.  While this may not seem like a long period of time with regard to governmental actions in general, it nonetheless represents a significant period of time with respect to this individual's claim.  This Court is especially cognizant of Magistrate Judge Grimm's observation in matters such as these:  "People generally do not seek Social Security disability benefits, and most particularly SSI, because they want to subsidize an already comfortable existence.  In many cases, they seek benefits because they have nowhere else to turn."  *Schoofield v. Barnhart*, 220 F.Supp.2d 512, 524, 84 Soc. Sec. Rep. Serv. 221 (D.Md. 2002).[6]  On the record before this Court, it appears that further delay of this matter would be unwarranted, and an award of DIB and SSI benefits to the Plaintiff is proper.

Given this recommendation, the court need not consider the other Objections set forth by Plaintiff.

---

[6] Chief Judge Smalkin adopted in its entirety the Report and Recommendation of Magistrate Judge Grimm.

## **RECOMMENDATION**

Based upon the foregoing, **it is recommended that the Commissioner's decision be reversed** and that benefits be awarded to the Plaintiff.

S/George C. Kosko
United States Magistrate Judge

July 7, 2006
Charleston, South Carolina