IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| James M. Kanard, ) | |
| ) | Civil Action No. 9:05-2255-DCN-GCK |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | **ORDER AND OPINION** |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Magistrate Judge George C. Kosko's recommendation that this court reverse the Commissioner's decision denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). The record includes a Report and Recommendation ("Report") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

**I.     PROCEDURAL BACKGROUND**

Plaintiff James M. Kanard filed for DIB and SSI benefits on September 27, 2002. (R. 29.) The Social Security Administration denied his application initially and upon reconsideration. (R. 17.) A hearing was held before Administrative Law Judge Karen H. Baker ("ALJ") on November 5, 2004. (R. 38-71.) Plaintiff was represented by counsel at the hearing. The ALJ found that plaintiff did not meet the Act's requirements for disability, concluding that the Commissioner satisfied her burden to show that plaintiff could seek alternative employment available in the national economy. Plaintiff appealed

1

to this court. The magistrate judge determined that the ALJ erred in disregarding the results of IQ tests, and the magistrate judge concluded the low IQ scores qualified plaintiff as disabled. The magistrate judge reversed the ALJ's decision and awarded benefits to plaintiff. Report at 19. Defendant has made timely objections to the magistrate judge's Report.

**II.     FACTS**

At the time of his hearing before the ALJ, plaintiff was fifty-four years old. Report at 2. Plaintiff has no more than an sixth-grade education and has worked in various jobs, including positions as a brick mason, tile layer, janitor, and furniture mover. (R. 17.)  Plaintiff testified at the hearing that he was injured in 1988 when he fell from scaffolding while working as a brick mason, causing severe injury to his left hip. (R. 50-51.) The injury resulted in a closed period of disability from September 1988 to sometime in 1989. (R. 51.) Plaintiff testified that he was unable to resume working as a brick mason following the fall. In his most-recent job, plaintiff worked until 2001 in floor maintenance and cleaning. (R. 46.) At that time, plaintiff stated that he could not longer perform his work because of swelling in his hands and problems with his legs and feet. (R. 46.)

Plaintiff testified that he suffers from many physical ailments, which he supported with medical records and physician reports. He stated that most of his physical limitations stem from joint pain resulting from gout and other pain in his legs and hips. (R. 55-61.) Plaintiff stated he cannot put any substantial amount of weight on his hip because of pain. (R. 55.) Plaintiff uses a walker and said that he can only walk about half

a block before experiencing "unbearable" pain and shortness of breath. (R. 56.) Gout in his wrist and hands prevent him from being able to maintain a tight grip on objects, which keeps him from using hand tools. (R. 59-60.) He said that he also suffers from back pain and that he cannot wear shoes or socks because his feet are too swollen and tender. (R. 56-57.) Plaintiff additionally testified that he suffers from depression and a lack of energy. (R. 60-61.)

A vocational expert also testified at the hearing. The vocational expert classified plaintiff's past employment as a janitor as unskilled and medium; as a brick mason as skilled and medium; as a brick mason's assistant as unskilled and heavy; and as a tile layer as semi-skilled and heavy. (R. 67.) The ALJ asked an initial hypothetical question, which was based on the results of the Physical Residual Functional Capacity Assessment:

> Now I want you to assume that the Claimant has the limitations in Exhibit B6F [the Physical Residual Functional Capacity Assessment], which is that he's limited to performing light work. He can lift 20 pounds occasionally, 10 pounds frequently. Sit, stand, or walk six hours each in an eight-hour day. . . . Limited ability to push and pull with the left hand. And he can perform occasional climbing, occasional balancing, and occasional crawling. Frequent for all other postural activity. If those are the limitations is there work he can do?

(R. 67-68.) The vocational expert responded that there was employment available within those parameters, including light janitorial work, security-related jobs, and various industrial jobs such as a machine operator. (R. 68.) The vocational expert also stated that plaintiff would be able to do those jobs even though he has a marginal or limited education. (R. 68.)

The ALJ asked a second hypothetical:

> Now I want you to assume for the second hypothetical, first of all, what I gave you in the first hypotheticals. And then assume that the Claimant has significant pain so that at least for large portions of the month, of each month, let's say three to five days he can't wear shoes, has difficulty using his hands due to pain. And if that's the case, is there work he can do?

(R. 68-69.) The vocational expert again stated that there would not be employment available if claimant had those limitations. (R. 69.) Finally, the ALJ asked a third hypothetical:

> [A]ssume that the Claimant is of the age and weight, et cetera, that he has testified to. He has a fifth- or sixth-grade educational level. That he has the problems with his leg and with the gout that he has testified to, and the significant pain that he testified to. The fact that he must use either a cane or a walker to ambutate. Given these circumstances, is there are any–are there any jobs available?

(R. 69.) The vocational expert against testified that there would not be employment available if claimant had those limitations. (R. 69.)

The ALJ asked plaintiff to see a psychologist for a consultive psychological examination to evaluate plaintiff's ability to read, think, and his depression. (R. 69.). After the hearing, plaintiff saw psychologist Dr. Robert Moss. Dr. Moss administered the Wechsler test of adult IQ. Plaintiff scored a verbal IQ of 73, a performance IQ of 63, and a full scale IQ of 66. (R. 222.) Dr. Moss also administered two tests of effort to determine whether plaintiff was malingering. (R. 222.) On the first test, two of the three trials indicated that plaintiff was putting forth incomplete effort. (R. 222.) The second test also suggested incomplete effort. Dr. Moss diagnosed plaintiff with dysthymia, probable reading disorder, and probable borderline intelligence. (R. 223.) However, Dr. Moss concluded that plaintiff has no limitations on his ability to understand, remember, and

4

carry out short, simple instructions. (R. 224.) Plaintiff, according to Dr. Moss, has moderate limitations on his ability to understand, remember, and carry out detailed instructions. Finally, Dr. Moss concluded that plaintiff has slight limitations on his ability to make judgements on work-related decisions. The ALJ received Dr. Moss's report after the hearing but before she issued her ruling. The vocational expert never saw Dr. Moss's report, nor did he know of Dr. Moss's findings (given that Dr. Moss conducted the evaluation after the hearing).

On March 12, 2005, the ALJ issued a decision unfavorable to plaintiff. (R. 30.) The ALJ found that plaintiff he had not engaged in substantial gainful activity since the alleged onset of disability, that he had "severe impairments" and that he was unable to perform his prior work. (R. 29-30.) However, the ALJ concluded that plaintiff's testimony as to his symptoms and functional limitations was not credible and thus found–based on the vocational expert's testimony–that there were a significant number of jobs available in the national economy that plaintiff could perform. (R. 29-30.) The ALJ did not consider the results of the IQ test conducted by Dr. Moss to be relevant because of the evidence that plaintiff malingered. (R. 24-25.)

The magistrate judge concluded that the ALJ erred in disregarding the test results contained in Dr. Moss's report. Report at 14. Because plaintiff scored an IQ less than 70 on at least one of the portions of the test and because of his severe impairment, the magistrate judge determined that plaintiff is presumptively disabled under § 12.05(c) of

20 C.F.R. Pt. 404, Subpt. P, App. 1.[1] Report at 14. Moreover, the magistrate judge stated that the ALJ erred by not submitting Dr. Moss's report to the vocational expert for his consideration. Report at 16. The magistrate judge recommended that this court reverse the Commissioner's decision and award benefits to plaintiff. Report at 19.

## II.     SCOPE OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's Report to which a specific, written objection is made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify the Report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636 (b)(1).

---

[1]Section 12.05(c) provides in relevant part: "Mental retardation refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]"

6

Although this court may review the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if h[er] decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

## III.     ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a sequential evaluation

process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether that severe impairment meets or equals an illness contained in 20 C.F.R. Part 4, Subpart P, Appendix 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the impairment prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as Residual Functional Capacity or "RFC") and his vocational capabilities (age, education, and past work experience) to adjust to a new job. Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 20 C.F.R. § 416.920). The applicant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d at 1203 (citing Hunder v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). If the sequential evaluation process proceeds to the fifth step, the burden shifts to the Commissioner to show that other work is available in the national economy which the claimant could perform. Id.; see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (discussing burden of proof).

      The issues in this case involve steps three and five in the sequential evaluation process, 20 C.F.R. § 416.920(d), (g). Specifically, there is a question as to whether Dr. Moss's report establishes that plaintiff is disabled under § 12.50(c) of 20 C.F.R. Part 4, Subpart P, Appendix 1. There is also an issue of whether there is substantial evidence to support the ALJ's finding that plaintiff could seek alternative employment available in

the national economy. Defendant's objections are discussed in more detail below.

    **a.**    **Defendant's Objections**

        **i.**    **Mental evaluation in classification of disability.**

Defendant objects to the magistrate judge's determination that the ALJ should have awarded benefits to plaintiff because he was presumptively disabled under § 12.05(c). Report at 16. Specifically, the magistrate judge concluded the ALJ's finding that plaintiff did not suffer from an impairment under 20 C.F.R. Part 4, Subpart P, Appendix 1 was not supported by the substantial weight of the evidence in light of Dr. Moss's evaluation. Report at 14-16. Defendant contends that the magistrate afforded too much weight to the results of tests conducted by Dr. Moss, and that the ALJ properly disregarded the IQ test results. (Pl. Obj. 1-2.)

The ALJ's role is to make findings of fact and to resolve evidentiary conflicts. Kasey v. Sullivan, 3 F.3d 75, 78 (4th Cir. 1993). As a corollary to that general principle, courts in other circuits have held that the IQ scores derived from standardized tests are not binding on the ALJ when contradicted by the rest of the record. See Cacere v. Com'r of Social Security, 2006 WL 1888695, *3 (3d Cir. July 10, 2006); Fischer v. Barnhart, 129 Fed. Appx. 297, 302 (7th Cir. 2005); Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004). These courts have also affirmed an ALJ's disregard of the IQ scores when there was evidence that the claimant malingered in taking the IQ test. See, e.g., Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004) (affirming an ALJ's conclusion that the IQ scores were invalid, a finding the ALJ based in part on the administering psychologist's statements that the claimant malingered during administration of exam).

In this case, Dr. Moss's own statements create a conflict in the evidence. The performance and full scale IQ scores were 63 and 66, respectively, and therefore well within the range of 60 to 70 required by § 12.05(c). However, the psychologist's statements and the effort tests results provide a reason to suspect that the IQ scores are invalid. Dr. Moss administered two tests to gauge plaintiff's effort. On the first effort test, the results of two of three trials demonstrated that plaintiff was malingering. (R. 222.) The results of the second effort test, according to Dr. Moss, were "suggestive of incomplete effort." (R. 222.) Despite the low IQ scores and diagnosis of plaintiff with "probable borderline intelligence," Dr. Moss determined that plaintiff's mental limitations place no limitation on his ability to understand, to remember and to carry out short, simple instructions. (R. 222-24.) Further, Dr. Moss concluded that while plaintiff's mental limitations placed a moderate restriction on his ability to understand, to remember to and carry out detailed instructions, plaintiff has only a slight restriction in his ability to make judgments on simple work-related decisions. (R. 224.) Given the internal inconsistencies in Dr. Moss's report, there is substantial evidence to support the ALJ's decision to disregard the IQ test results.

Upon disregarding the IQ test results, there was no evidence in the record to indicate plaintiff's IQ was between 60 to 70 as required by § 12.05(c)'s definition of mental retardation. The ALJ therefore correctly found that plaintiff did not meet an impairment listed in Appendix 1 and properly moved beyond step three in the sequential evaluation process.

### ii. Mental evaluation in determination of alternative employability.

Defendant objects to the magistrate judge's Report on the grounds that he improperly determined the ALJ erred in not presenting Dr. Moss's report to the vocational expert. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). Impairments supported by the record must be included as part of the hypothetical questions. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Reliance on flawed hypotheticals cannot serve as substantial evidence to support an ALJ's findings. See id.; see also Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1989) (refusing to use flawed hypotheticals as substantial evidence to support ALJ's findings).

The vocational expert did not consider Dr. Moss's mental evaluation, which was completed after the hearing, in forming his opinions. Moreover, the hypotheticals the ALJ presented to the vocational expert did not reflect plaintiff's potential mental limitations—limitations supported by Dr. Moss's conclusions.[2] (R 224.) The ALJ therefore should have submitted the report to the vocational expert for his consideration and should have included mental limitations in the hypothetical questions.

---

[2] Although the IQ scores may be disregarded, Dr. Moss still concluded that plaintiff has mental limitations–namely that he suffers from moderate limitations in his ability to carry out, to remember, and to understand detailed instructions as well as a slight limitation in his ability to make judgments with respect to simple instructions. (R. 224.)

The ALJ relied exclusively on the vocational expert's testimony in finding that the Commissioner had satisfied its burden of proving that plaintiff could perform alternative work existing in the national economy.[3] (R. 28.) Because the vocational expert's testimony was based on an incomplete consideration of the record and the hypotheticals presented to the vocational expert were flawed, there is not substantial evidence to support the ALJ's finding that plaintiff could seek alternative employment.

Defendant argues that "[i]t is the duty of the ALJ, not the vocational expert, to evaluate medical evidence and translate that evidence into a valid residual functional capacity assessment." (Def. Obj. 3.) However, defendant's argument is flawed because the primary issue is whether the ALJ could properly have made her own assessment of alternative employability—not whether the ALJ could evaluate plaintiff's residual functional capacity. The Fourth Circuit has clearly stated that use of a vocational expert "is the preferred method of proving alternative employability." Hall v. Harris, 658 F.2d 260, 266 (4th Cir. 1981). Even though an ALJ has discretion in requiring the testimony of a vocational expert, "in making these critical determinations [of alternative employability] 'the ALJ is not qualified to provide affirmative vocational evidence.'" Id. (quoting Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The ALJ in this case thus could not provide her own assessment of plaintiff's alternative employability because she was not qualified do so. Therefore, even assuming that the ALJ made such

---

[3]The ALJ determined that plaintiff suffered from nonexterional limitations. (R. 28.). When a claimant has "both exertional and non-exertional limitations, the tables are not conclusive but may only serve as guidelines." Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984). The vocational expert's testimony therefore serves as the bulk of the evidence that could support the ALJ's findings as to alternative employability.

an assessment, her assessment cannot provide substantial evidence to support her findings as to plaintiff's alternative employability.

### iii. Magistrate judge should have remanded for further proceedings rather than reversed the ALJ's decision.

Defendant finally objects to the magistrate judge's reversal and award of benefits to plaintiff. The magistrate judge, after reversing the ALJ's decision to disregard the IQ scores, determined that the outcome on remand would have been certain and thus awarded benefits. Report at 17-18. Defendant essentially contends that this was in error because reversal should be the exception rather than the rule in these types of cases, and the record was not sufficiently clear that plaintiff is disabled to warrant reversal and award of benefits. (Def. Obj. 5-6.)

This court may affirm, modify, or reverse the ALJ's decision, with or without remanding for rehearing. 42 U.S.C. § 405(g). Where a finding of disability is supported by substantial evidence in the record and where it appears that a rehearing would merely delay receipt of benefits, the court may award benefits. Parsons v. Heckler, 739 F.2d 1334, 1340 (8th Cir. 1984). In this case, however, remanding the claim for rehearing would not result in merely delaying plaintiff's receipt of benefits.

As discussed above, the ALJ's finding that plaintiff could seek alternative employment was not supported by substantial evidence because the vocational expert's opinion and the hypotheticals presented to him did not consider the plaintiff's mental limitations. How the vocational expert's testimony will change, if at all, based on Dr. Moss's evaluation is less than clear. Given the importance of the vocational experts testimony to whether the ALJ finds that plaintiff can seek alternative employment, the

correct remedy is to remand plaintiff's claim to the ALJ for rehearing on the issue of alternative employability.

## IV.     CONCLUSION

For the reasons stated above and in the magistrate judge's Report and Recommendation, it is therefore **ORDERED** that plaintiff's claim of benefits be **REMANDED** to the Commissioner pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this order and opinion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 29, 2006**
**Charleston, South Carolina**